IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WALTER S. THOMAS, | ) | CASE NO. 1:12 CV 780 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

This is an action by Walter S. Thomas under 42 U.S.C. §§ 405(g) and 1383(c)(3) for

judicial review of the final decision of the Commissioner of Social Security denying

Thomas's application for supplemental security income.[1] The Commissioner has answered[2]

and filed the transcript of the administrative proceedings.[3] The parties have consented to

magistrate judge's jurisdiction.[4] Under my initial[5] and procedural orders,[6] they have briefed

---

[1] ECF # 1.

[2] ECF # 9.

[3] ECF # 10.

[4] ECF # 14.

[5] ECF # 5.

[6] ECF # 12.

their positions[7] and submitted supplemental charts[8] and a fact sheet.[9] They have also participated in a telephonic oral argument.[10]

For the reasons that follow, I will find that the decision of the Commissioner is not supported by substantial evidence and so the matter must be remanded for further proceedings.

## Facts

### A.    Background facts and decision of the Administrative Law Judge ("ALJ")

Thomas, who was born in 1961, has limited education[11] and was incarcerated from the 1980s into the early 2000s,[12] thus acquiring no past relevant work experience.[13] He presently suffers from various mental impairments[14] and lives with his sister.[15]

The ALJ, whose decision became the final decision of the Commissioner, found that Thomas had severe impairments consisting of generalized anxiety disorder, depressive

---

[7] ECF # 18 (Thomas's brief); ECF # 23 (Commissioner's brief).

[8] ECF # 18, Ex. 1 (Thomas's charts); ECF # 23, Ex. 1 (Commissioner's charts).

[9] ECF # 11 (Thomas's fact sheet).

[10] ECF # 26.

[11] Transcript ("Tr.") at 19.

[12] *Id.* at 186, 213.

[13] *Id.* at 19.

[14] *Id.* at 12.

[15] *Id.* at 13.

neurosis, personality disorder, posttraumatic stress disorder ("PTSD"), major depressive disorder, and panic disorder.[16]

After concluding that Thomas's impairments did not meet or equal a listing,[17] which included a finding that Thomas's mental impairments did not cause at least two marked restrictions in his activities of daily life or episodes of decompensation,[18] the ALJ made the following finding regarding Thomas's residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following limitations: the claimant is restricted to jobs that involve only superficial interpersonal contact with coworkers and the public, and he is limited to simple 1-2 step instructions.[19]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Thomas could perform.[20] The ALJ, therefore, found Thomas not under a disability.[21]

---

[16] *Id.* at 12.

[17] *Id.* at 12-13.

[18] *Id.* at 13-14.

[19] *Id.* at 14.

[20] *Id.* at 19-20.

[21] *Id.* at 20.

B.     **Issues on judicial review**

Thomas asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Thomas argues that the Commissioner failed to properly weigh and articulate a basis for rejecting the opinions of Thomas's treating psychiatrist, Praveen Abraham, M.D., and consultative psychologist, Thomas Zeck, Ph. D. [22] The Commissioner asserts that substantial evidence supports the ALJ's determination to accord the weight given to these sources, and thus to the RFC itself.[23]

## Analysis

A.     **Standards of review**

1.     ***Substantial evidence***

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant

---

[22] ECF # 18 at 6-10.

[23] ECF # 23 at 12-15.

evidence as a reasonable mind might accept as adequate to support a conclusion.' "

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[24]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[25] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[26]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.    *Treating physician rule and good reasons requirement***

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from

---

[24] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[25] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[26] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

-5-

> objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[27]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[28]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[29] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[30]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[31] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[32] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[33] In deciding if such

---

[27] 20 C.F.R. § 404.1527(d)(2).

[28] *Id.*

[29] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[30] *Id.*

[31] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[32] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[33] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[34]

In *Wilson v. Commissioner of Social Security*,[35] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[36]  The court noted that the regulation expressly contains a "good reasons" requirement.[37]  The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[38]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[39]  It drew a distinction between a

---

[34] *Id.* at 535.

[35] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[36] *Id.* at 544.

[37] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[38] *Id.* at 546.

[39] *Id.*

regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[40]  The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[41]  It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[42]

The opinion in *Wilson* sets up a three-part requirement for articulation against which an ALJ's opinion failing to assign controlling weight to a treating physician's opinion must be measured.  First, the ALJ must find that the treating source's opinion is not being given controlling weight and state the reason(s) therefor in terms of the regulation – the absence of support by medically acceptable clinical and laboratory techniques and/or inconsistency with other evidence in the case record.[43]  Second, the ALJ must identify for the record evidence supporting that finding."[44]  Third, the ALJ must determine what weight, if any, to give the treating source's opinion in light of the factors listed in 20 C.F.R. § 404.1527(d)(2).[45]

---

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Wilson*, 378 F.3d at 546.

[44] *Id.*

[45] *Id.*

-8-

In a nutshell, the *Wilson* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[46] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[47] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[48] or that objective medical evidence does not support that opinion.[49]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[50] The Commissioner's *post hoc* arguments on judicial review are immaterial.[51]

Given the significant implications of a failure to properly articulate (*i.e.*, remand mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such

---

[46] *Rogers*, 486 F.3d at 242.

[47] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[48] *Hensley v. Astrue*, 573 F.3d 263, 266-67 (6th Cir. 2009).

[49] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[50] *Blakley*, 581 F.3d at 407.

[51] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

weight.  In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[52]

- the rejection or discounting of the weight of a treating source without assigning weight,[53]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[54]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[55]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[56] and

---

[52] *Blakley*, 581 F.3d at 407-08.

[53] *Id.* at 408.

[54] *Id.*

[55] *Id.* at 409.

[56] *Hensley*, 573 F.3d at 266-67.

-10-

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[57]

The Sixth Circuit in *Blakley v. Commissioner of Social Security*[58] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[59]  Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[60]

In *Cole v. Astrue*,[61] the Sixth Circuit recently reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[62]

---

[57] *Friend*, 375 F. App'x at 551-52.

[58] *Blakley*, 581 F.3d 399.

[59] *Id*. at 409-10.

[60] *Id*. at 410.

[61] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[62] *Id.* at 940.

**B.     Application of standards – the decision of the Commissioner is not supported by substantial evidence.**

The primary and overriding issue is whether the ALJ properly weighed and articulated as to the opinion of Thomas's treating psychiatrist, Praveen Abraham, M.D. The Sixth Circuit's interpretation of the treating physician rule as set out in the regulations is found in the *Wilson* case and its progeny. The Court has established requirements for the application of this rule and prescribed remand as the remedy for the rule's violation except in limited instances of harmless error. In order to comply with the treating physician rule, the ALJ must recognize the treating physician's RFC opinion, decide if that opinion should receive controlling weight, assign weight if not controlling, and give a statement of good reasons for not giving the opinion controlling weight. The good reasons requirement cannot be satisfied by a conclusory statement.

In deciding if the ALJ has given sufficient "good reasons" for the weight assigned, the touchstone is meaningful judicial review. Good reasons cannot be supplied by a judicial officer's *de novo* review and analysis of the medical evidence or by *post hoc* rationalizations supplied through the arguments of counsel for the Commissioner.

Here, the treating psychiatrist, Dr. Abraham, opined that Thomas was moderately impaired in his abilities to maintain attention and concentration for extended periods, to perform activities within a schedule, to maintain regular attendance, to sustain an ordinary routine without special supervision, to interact appropriately with the public, to accept

-12-

instructions and criticism from supervisors, and to get along with coworkers.[63] He rated Thomas's ability to maintain a normal workday and workweek without interruptions at a consistent pace without unreasonable rest periods as markedly limited.[64] He concluded that Thomas was unemployable.[65]

The ALJ discussed Dr. Abraham's opinion in a single paragraph.[66] He declined to give that opinion controlling weight because, "it is not consistent with the overall evidence."[67]

The transcript also contains a residual functional capacity evaluation by an examining psychologist, Thomas Zeck, Ph.D.[68] Dr. Zeck opined that Thomas's abilities to relate to coworkers and supervisors and to withstand the stress and pressures of the day-to-day work activity is at least moderately impaired.[69] He further opined that Thomas's ability to understand, remember, and follow instructions is mildly to moderately impaired.[70] Finally, he evaluated Thomas as capable of maintaining attention, concentration, persistence, and

---

[63] Tr. at 1268.

[64] *Id.*

[65] *Id.*

[66] *Id.* at 18.

[67] *Id.*

[68] *Id.* at 1239-44.

[69] *Id.* at 1243, 1244.

[70] *Id.* at 1243.

-13-

pace to perform simple repetitive tasks as not impaired provided that he can work by himself and not have to interact with others.[71]

The ALJ discussed Dr. Zeck's evaluation and observations extensively in his decision. He did not assign significant weight to Dr. Zeck's opinion because it was not consistent with the overall evidence or with his report.[72] The ALJ specifically observed that although Dr. Zeck noted moderate limitations in social functioning, he found Thomas capable of maintaining attention, concentration, persistence and pace to perform simple repetitive tasks not impaired if he can work by himself and not interact with others.[73]

The transcript also contains the mental residual functional capacity evaluation of the state agency reviewing psychologist, Patricia Semmelman, Ph.D.[74] Dr. Semmelman found moderate limitations in the abilities to maintain attention and concentration for extended periods, to work in coordination or proximity with others, to complete a normal workday and workweek without interruption, and to perform at a consistent pace without unreasonable rest periods, to interact appropriately with the general public, and to respond appropriately to changes in the work setting.[75] In her narrative, Dr. Semmelman opined that Thomas could interact occasionally and superficially and receive instructions and ask questions

---

[71] *Id.* at 1244.

[72] *Id.* at 17.

[73] *Id.*

[74] *Id.* at 1259-62.

[75] *Id.* at 1259-60.

appropriately in a smaller group or solitary setting, can cope with ordinary routine and changes in the work setting that are not fast-paced or of high demand.[76] The ALJ makes no reference whatsoever to Dr. Semmelman's opinion.

Thomas contends that the ALJ's violation of the treating physician rule as interpreted by *Wilson* and its progeny requires a remand. He submits that the ALJ's decision does not provide a basis for meaningful judicial review. He also complains that to the extent that the ALJ discussed the medical evidence in the record, he cherry-picked and took out of context a few references that might be construed to portray him as less limited than opined in the opinions of the medical sources.

At the oral argument, counsel for Thomas cited the recent Sixth Circuit opinion in *Gayheart v. Commissioner of Social Security*[77] in which the court reversed the district court's affirmance of the ALJ, applying the treating physician rule with an emphasis on sustainability. In *Gayheart* the district court and the ALJ exaggerated certain references to activities of the claimant as support for a finding that the claimant could sustain the demands of a normal work schedule.

The Commissioner concedes that the ALJ here did technically violate the treating physician rule but argues that  the decision as a whole sets out good reasons, based on the totality of the medical evidence to support the ALJ's implied findings not to give Dr. Abraham's opinion controlling weight. Further, the Commissioner argues that the

---

[76] *Id.* at 1261.

[77] *Gayheart v. Comm'r of Soc. Sec.*, No. 12-3553, 710 F.3d 365, 380 (6th Cir. 2013).

opinions of Drs. Zeck and Semmelman are more or less consistent with the RFC adopted by the ALJ.

The ALJ's decision here not to conform to the analytic rubric of *Gayheart* means that there is no reasoning by the ALJ on the record for the decision to accord less than controlling weight to Dr. Abraham's opinion.  It is not enough, as the Commissioner contends, that the reviewing court can now weave together a defensible reason from various strands of evidence in the record.  The clear teaching of the Sixth Circuit is that the ALJ must perform that analysis of the evidence and so provide a clear roadmap for the court to follow in reviewing that analysis. Anything less deprives the claimant of due process and requires that the matter be remanded.

## Conclusion

Accordingly, for the reasons stated above, there is not substantial evidence to support the finding of the Commissioner that Thomas had no disability. Accordingly, the decision of the Commissioner denying Thomas supplemental security income is reversed and the matter remanded for consideration of the medical opinions referred to here in light of the applicable standards.

IT IS SO ORDERED.

Dated: September 24, 2013                    s/ William H. Baughman, Jr.
                                             United States Magistrate Judge